Our next case for today is case number 4-16-0593, and that is Barbara Monson v. City of Danville and for the appellant, and I know we've met, but I don't want to mispronounce your last name. Sure, it's Miranda Soucy. Okay, Ms. Soucy, and then for the appellee, Mr. McKenna? Yes. Thank you. You may proceed, counsel.  Barbara Monson v. City of Danville May it please the court, counsel. As I stated earlier, my name is Miranda Soucy. I represent the plaintiff appellant, Ms. Barbara Monson. Today we are asking this court to reverse the order of the circuit court granting summary judgment and remand this case for further proceedings. The reason I am asking for this is because a plain reading of the Tort Immunity Act, and more specifically, Article III, demonstrates that an analysis pursuant to Article II, Section 201, is unwarranted when Article III, Section 102 applies. If we look at Article III, Section 102, that section starts with this most important phrase, except as otherwise provided in this article. The defendant argues, and the circuit court found, that Article III, Section 102 codifies a general duty, but this argument ignores that plain language because a plain reading of the Act and the article demonstrate that the legislative intent was to codify the duty, but to immunize local government only to the extent that is set forth within Article III. When looking at case law that has interpreted Article III with Article II, I think the most salient case at issue here is the Murray case, the Supreme Court decision of 2007. In that case, they looked at Article II, Section 201, which is the section that the defendant relies upon, and they compared that to Article III, Section 108, and while 108 is not at issue in this case, I think there is a huge comparison that we can make between the two of them. And that is, 108 actually starts with except as otherwise provided in this Act. Article III, 102 says except as otherwise provided in this article. And so Section 108 actually refers to other parts of the Act, and in that situation, you actually do have to go back and look at the language of Article II, specifically 201, and determine whether or not one of those supersedes the other. And in this situation, because 102 says except as otherwise provided in this article, the only analysis is to look within that article. The Tort Immunity Act has 11 separate articles, and Article III has no exception that applies in this instance for the duty of local governments to maintain their property in a... Did the acts or omissions in this case of Monson constitute discretionary acts and policy determinations? First, my response to that would be I don't even think we need to get into that analysis, but with respect to your question... Well, humor me and let's assume we do. Yes. What would be your answer? My answer to that is that there's issues of credibility with respect to the testimony that is set forth in the record, the testimony and the affidavit of Mr. Ahrens. Specifically, if you look at the cases that were cited by the defendant in their appellate brief, all of those cases involved a conscious decision or omission related to a discretionary act. I don't understand. This is a motion for... What does it say?  Motion for summary judgment, Your Honor. Motion for summary judgment, yes. Motion for summary judgment, affidavits provided in support thereof. What do you mean when you're telling us that there are credibility issues? Well, Mr. Ahrens in his actual deposition testimony stated that he had no specific recollection of including this particular area of sidewalk. He had no documentation. He said he made a budgetary... Did he make a motion to strike? That was with respect to just the deposition, not with the affidavit. Well, the motion to strike in support of the summary judgment? No, we did not, Your Honor. Then why isn't it before the trial court as an evidentiary matter to consider? And if it is, then there's no credibility issue to be weighed. You don't weigh credibility issues on depositions or affidavits, do you? Correct. But one of the things, and we cited case law to this effect that talks about the credibility issues, when there is a clear credibility issue as to it, the court should not entertain that, and it should be a question of fact pertaining to that particular... You mean the trial court errs by considering a deposition when no one has moved to strike it? Correct. That's kind of a tough thing for the trial court, isn't it? I mean, I'm a trial judge. Here is an affidavit or a deposition submitted in support of the motion, the other summary judgment. If there's a problem with it, I think I should expect there to be a motion to strike it, so I won't consider it. In the absence of a motion, why shouldn't I consider it? I think they should consider it, but I think what happened in this case is we argued that there were factual disputes because of the credibility issues in terms of not necessarily the court should weigh the credibility, but that because there is a necessary element of weighing the credibility, I don't know that there was anything necessarily objectionable to strike that particular affidavit. From my perspective, the issue really came down to whether or not, when you look at the facts, whether or not they actually were credible in that instance. And the issue that we had and what we argued was that the testimony of Mr. Ahrens, when you compounded that with the affidavit, it essentially just tracked the law. It tracked exactly what the discretionary law was but didn't have any specific facts, didn't have any specific report. There was no documentation. There was nothing they could point to. They essentially just said there was this project. We looked at the sidewalks. I don't remember this specific sidewalk. Well, assuming the trial court found these things, the deposition of Bunsen to establish that these were discretionary acts and policy determinations for Ahrens, why wouldn't that then be adequate to grant the motion of summary judgment? I think part of what we get into is when we look at the other cases, for instance, the line of cases that the defendant cited, there always was an actual specific articulable conscious decision or discretionary decision made. And in this instance, I don't think there's a single fact that was articulated by Mr. Ahrens in his deposition or in the affidavit that indicated that actually a conscious decision was made with respect to this particular piece of sidewalk. He indicated that there was a sidewalk project going on the year before but does not remember anything about this particular area. And with respect to that, I think there's a question of whether or not this particular area. Let's assume he had said, yeah, I'm familiar with that sidewalk. We didn't think you needed to fix it. Would that have been enough? For purpose of the discretionary act, possibly. I think from our perspective, then we get into whether or not the Danville Ordinance, which is 100.52, comes into case because that's compelling evidence that the sidewalk work was required to be performed in a certain manner and then it would take it outside of the discretionary act situation. And that would be the next step. And the ordinance would trump the statute? The ordinance would, well, the statute in terms of Article 102, excuse me, not that it would trump it. It's just that when you're talking about discretional versus ministerial, if there's an actual articulable ordinance that's in place that specifies how the city is supposed to perform the work and the manner in which that work is supposed to be performed, it takes it out of discretionary and puts it into the ministerial category. That means that the city employee no longer had discretion to make those decisions. They had to follow the articulable path, which would be ministerial, and then we would be outside of the 201 immunity with respect to that. But as I mentioned earlier, if you actually look at the plain reading of the act with respect to Article 3, that analysis shouldn't even be gotten into. But even if you do look at Article 3 and decide that we have to look at Article 2, then we get into the situation that is set forth in Murray, which is determining which of the articles prevails over one another. And Article 2 is a general immunity that is applied, whereas Article 3 sets forth a specific duty and immunities within it related to public property. And because it is specific pursuant to Murray, which is certainly a case law that we need to follow. Do we agree with you that we have to reject the second district decision in Richter? We do have to reject that. And for a specific articulable reason, Your Honor, in Richter there was a waiver of this particular argument. The plaintiff's attorney, for whatever reason, agreed in the trial court and then agreed again on the appellate level that the decision that needed to be made was whether or not it was discretional versus ministerial. We don't have a waiver in this case. And a waiver by another attorney in a separate case certainly does not control an analysis in a future case. So you think without a waiver the second district would not have so concluded? I think without a waiver and with the arguments that are set forth in our case, the decision in Richter would have been different. Now certainly once you get to what we have in our case and we decide that Section 3102 applies and that we don't have to get into the Article 2 discussion, then we have to go into an analysis of de minimis versus open and obvious, which the trial court in our case did not get into in their opinion. But we can certainly address that today. But yes, I think the reason Richter does not apply is because on Paragraph 36 it says the parties agree that Section 3-102 applies to ministerial functions and that Section 2-201 applies to exercises of discretion. That is an agreement and it was a waiver of the parties in that instance. Therefore, it was taken out of the appellate court's control to move down that path. No one made that argument. It was waived. And in this case, it is not. I mentioned earlier that when we get into an analysis under Article 3 and you take us out of Article 2 and there is no discretional immunity analysis, we then have to get into the facts of this particular case with respect to open and obvious and de minimis. And in this case, I think the easier of those two to address is the open and obvious. The condition at issue was masked by a puddle of water. The plaintiff did not and could not see the defect. She was looking ahead to cars that were parked along the roadway and to the traffic along the roadway to ensure that there was no danger presented in front of her as she breached her car. So I think with respect to the open and obvious, that there is a clear determination that the condition was not open and obvious and that if it was, there was a distraction exception that applied. With regards to the de minimis, certainly there was a question of fact here in this case. And again, the court did not reach this determination because they went down the Article 2 discretional immunity path. However, in this case, I think the more appropriate way would have been to go towards the de minimis and just a plain Article 3, 102 analysis. And in this case, we had a commercial district, an area that had street parking. You had a defect that depending on the facts you're looking at, there was a question of whether or not it was one and a half to two inches. It was adjacent to that parking. It's a busy area of traffic, and the plaintiff, again, was looking towards the cars and roadway to ensure there was no danger as she approached that. I think this case is most similar to the Ardvitsin case that talks about a plaintiff who was parked adjacent to a sidewalk, got out of the vehicle to go put money in the meter, went back to the vehicle, came back out, and took three steps along a sidewalk that ranged, depending on the testimony, from about one inch to about two inches. It was in a commercial district, and the court found specifically that when it cannot be found that all reasonable minds would agree that a defect is so slight that it should not go to the jury, it must go to the jury. In that case, because of the aggravating factors found with respect to the commercial district and the adjacent parking and the traffic along the roadway, the court found that that was a jury question. And for those same reasons, I would ask this court to find that discretionary immunity is not an analysis that applies to this case. And under Article III, Section 102, we would move to the de minimis analysis, and in that situation, it would be a question of fact. And thus, the case should be reversed and remanded to the trial court. Thank you. Thank you, Counsel. Mr. McKenna? Good morning, Your Honors, Counsel, and may it please the Court, I just want to jump in here and address some of the points that were brought up by Your Honors and some of the comments that Counsel made. So, to address the issue of basically what the plaintiff is asking for in this case, is to overturn a bunch of case laws, specifically Fourth District case law in Connell, reject Richter in the Second District, and basically find that a slew of other appellate cases that have come down over many number of years simply failed to observe that you cannot interplay 2-201 immunity with 3-102 duty. And that's what many cases from a variety of districts have done. You don't simply, 3-102, which codified the common law duty for municipalities to maintain their property just like a normal landowner would, does not have any restriction or limitation within it that says you cannot apply the immunity of 2-201. Counsel cites the language that says, except as otherwise provided in this article. And I think it's clear that what the intent of the legislature was there, is that there, after 3-102, there are numerous provisions in Article III that discuss various immunities, whether it's supervision, recreational property, hazardous activities, things like that. However, there is no court that has ever said that 2-201 does not also apply to potentially provide an immunity for maintenance of public property. Counsel cannot cite a case that says that. What we have is a specific case, the Connell case, from the 4th District in 1992, that specifically looked at all three sections that are at issue in this case. Specifically looked at 3-102 duty in terms of the municipality's maintenance of this roadway rise at a railroad crossing. And an issue not much different than what we have here. Here we have a rise in a sidewalk. There we have a rise in a road. And they looked at sections 2-109 and 2-201, both of which are at issue in this case, that discuss immunities based upon discretionary activities. And that court specifically said that the issue involves joint consideration of all three sections. Did not say that we cannot consider discretionary immunity in light of this 3-102 duty that the municipality has. And the quote specifically from that case is, the question to be answered is whether 3-102 imposed a duty on the township to remove the rise in the roadway, or whether the decision to do so was one for the road commissioner, thus triggering the immunity of 2-201. And specifically that court said that 3-102 applies only to the performance of ministerial duties. And clearly what that means is these terms have been well defined by the appellate courts and the Supreme Court throughout the years. A ministerial duty will impose a specific set of requirements on how somebody does something. And 3-102 is a general duty statute saying municipalities, you have to maintain your property. That's it. They don't say that you have to do it in X sort of way or Y sort of way. And now you have that duty is there. Is that ministerial in this case? No, because we know from the evidence and what the trial court considered in all this, was that Mr. Arnes, as the chief decision maker of public property, the director of public works for Danville, testified that it was his job to determine the policy. And their policy that they determined is he, along with his staff, would look at the sidewalks in the city and make a determination of their own accord what needed repairs and when such repairs would need to be made. And so that satisfies then the first prong of the immunity analysis. And then you have the second prong, which is, okay, are you then executing that discretion when going about doing your job? And clearly he, as well as Shelly Larson, his subordinate, who was the director of downtown services, specifically testified that they then did that. They eyeballed the sidewalks throughout the city. Shelly Larson did it first. She marked the sidewalks that she determined needed repair. And this was a continual process, but specifically there was a project that involved this very area of the fall that occurred less than a year before Ms. Monson's fall. And she determined that some areas needed repair, some areas didn't, including the area involved here did not. And then Mr. Arnes then followed her to determine that she made the right call, and he used his discretion. So we have almost a bifurcated, double level of discretion that happened here. And plaintiff's position that is essentially that you can never apply discretionary immunity when it comes to maintenance of public property. And that's simply not the law. It's not how the courts, including the Supreme Court, this district, and every other district, has handled that area of the law. There are numerous cases which addressed 2-201 discretionary immunity in the context of 3-102, maintenance of public property. Nichols case out of the first district, Helfayer first, Francis out of the third, Roble out of the first. All of them addressed potholes, maintenance of signs, maintenance of median barriers, maintenance of the sewer line. And all of them found that 2-201 immunity, discretionary immunity, applied. So plaintiff's position would essentially say that that entire line of case law is out the window, that those cases were decided wrongly, including that canal was decided wrongly. And I simply don't think that's the case. I don't think that's the law. Nor do I think it should be the law. And I think the Richter case perfectly exemplified how to apply it. We have facts in our case that are very similar. There was a maintenance of the sidewalk in that case, maintenance of the sidewalk here. There were people in Richter whose specific job it was to look at the sidewalk and determine what needed to repair. And in our case, that's exactly what we have. What about counsel's argument, though, that in Richter there was agreement that this was a discretionary issue, and she said there was no agreement in this case? I think that's a distinction without a difference. For instance, in our case, first of all, all that did was set forth or, I guess, follow what the stated law has been. In fact, that was in canal, that very subject, that 3-102, the duty, applies to ministerial duties. And that then the 2-201 immunity applies to discretionary activities. So I don't think it was restating other than what the law already has been established, particularly in this district. And so whether that agreement, even if that agreement was never made, the Richter opinion never said, by the way, we would have had a much different result if plaintiffs didn't make this agreement. I think that would have been something I've certainly seen appellate court to do, is make note of why they are ruling a certain way. And that certainly was not something that the second district made note of as being significant to their decision. Everything else falls right in line and on point with our case in terms of the facts. And it was a well-reasoned decision, and it was well thought out. Like canal, I think it addressed all of the issues. It specifically addressed the interplay between the immunity in 2-201 and 3-102. And I think significantly, the PLA on that case was denied by the Supreme Court. They chose not to even review it. So what's the inference from that? I think the Supreme Court saw that there is no conflict, that case, with any other law or any other district. There's nothing unusual or strange about that decision. So in looking at everything that Richter decided, this court, I believe, certainly is not bound by that, but I think it certainly is evidence of a well-reasoned decision that this court should follow, based upon the facts of this case as well. Canal, I think, being a Fourth District case, I think being perhaps the most significant part of that analysis. The last thing I wanted to bring up, the statutory construction part of this. When counsel says, well, because Article 3-102 starts, except as otherwise provided, I mentioned before that I believe the reason that's in there is because there are a number of immunities in Article 3 that follow that, and I think that's what they were referencing. There certainly was no prohibition on referencing, I think, an immunity that would be on Article 2. They could have easily written that into 3-102 by saying this does not allow for an immunity based on discretion. They chose not to do that. But I think if the legislature truly wanted to say that only the immunities enumerated in Article 3 apply, can be applied to 3-102, they could have easily said only as otherwise provided in this article. They used the term except, which I think implies that it is not barring any reference or application of an immunity in any other article. And as we've seen by numerous court cases since the Tort Immunity Act was written, certainly courts have consistently applied Article 2 immunity to Article 3 duties. And another line of argument that Article 2 immunity is trumped by Article 3 because it's more specific, I certainly believe that's a misleading argument. If you look at 3-102, it is a very general statement that a property owner, a municipality in this case, owes a duty to maintain property. Very exactly the same as a private landowner. It doesn't address potholes. It doesn't address sidewalks. It could apply to water. It could apply to bridges. It could apply to any number of things that a municipality owns. So it is not specific to any act. And I think what the way appellate courts have analyzed this is that what needs to be considered in terms of whether it's general or specific is what act is the plaintiff alleging the defendant did? Well, here they're alleging that they failed to inspect and maintain a sidewalk. That act, the evidence has shown in this case, was specifically discretionarily done by the city through two employees who were in charge of these services. And they said, we inspected it. We chose not to fix it. That is our, we used our discretion to do that. And in my mind, that is the specific act that necessarily needs to be decided here. And that act, I believe, goes to 2-102 immunity. That 2-201 specifically addresses the tort that they are alleging caused this injury. Counsel, do we have to be concerned with this notion that Mr. Ahrens can't remember this specific piece of sidewalk or we don't have documentation? Well, I think what, it was clear in his deposition that he said this entire street, including the area of this exact vault, would have been inspected. Now, it's no different than any other case that does someone need to specifically remember looking at one thing in order for it to be admissible at trial? Of course not. Examples were brought up in the appellee response in terms of a police officer talking to witnesses at a scene. Certain. Every case I've ever handled, police officers do not have an independent recollection of talking to witnesses at the scene. However, it's documented in such a way that they can then testify that, yeah, this person would have made this statement to me. Doctors the same way in terms of medical records. So what these two people both testified to for the city is that they certainly would have looked at this very area because they had inspected, they in fact replaced an area mere feet away from where Ms. Monson fell less than a year after their inspection. And both witnesses testified that clearly that's what they would have done pursuant to their custom and practice. So I think that allays any concerns in terms of foundation or admissibility or anything like that. I think that would be solid testimony in that regard. The final statements I wanted to make, Your Honors, well, concerning de minimis and open and obvious, obviously, the court can make whatever decisions, can base whatever decision it wants from the record. It doesn't necessarily have to be on the same basis the trial court decided. The trial court in its considered judgment only got as far as the discretion, which I agreed with. However, I do think solid bases would allow this court to either determine this was de minimis or to determine it was open and obvious. I don't think the plaintiff can have it both ways. I think it's one or the other. The evidence, the record is clear that this is a condition which is about an inch and a half. I believe we submitted a supplemental record that has color photos to the best extent we could provide of the scene. It has a ruler, so I think that's what that shows. A lot of cases have come down saying this is a de minimis condition. Counsel makes a point that this is in a business district that is one of the exceptions to the de minimis rule. However, it is right next to a light pole. Ms. Monson specifically marked the path she took and where she fell. And I think that eliminates that exception because it's not, I think, it's clearly not a normal pathway for somebody to take. And it's clearly not a deliberate encounter because Ms. Monson could have easily taken an alternate path as she conceded. With respect to open and obvious, if it's not de minimis, then it's right there for her to have seen. She admitted she was not distracted by a single thing. Wasn't there water covering it? Well, she didn't say covering it. She said there was a pool of water where the lower level of the sidewalk was compared to the upper level. But she never said it was covered. In fact, significantly to that, what she said is she walked over that very same area when she went from her car to the business she went to. Would someone step in a puddle voluntarily? That might be getting into credibility issues. But I think it bears to make a point of that wherever she was walking, everything was clearly in front of her. If she saw water, then I think that would have pooled in that area. That would have indicated that there was some sort of difference in deviation there, too. So I think either way you cut it, she can't have it both ways. And summary judgment would have been appropriate on one of those grounds as well. Your Honors have no questions for me? Thank you, Counselor. Okay. Thank you, Your Honors. Any rebuttal, Ms. Susi? Yes, Your Honor. Counsel mentioned that essentially we're asking this court to overturn its prior precedent in Kennell. But what we're really asking this court to do is apply the law as written. I couldn't hear what you said. What you're really asking is what? To apply the law as written. And I think that's where we get back into Murray. Kennell is a 1992 case out of this court. Murray was a 2007 Supreme Court case. And since Kennell, there's been two cases in this very court that have addressed this exact issue. The first was Haskell. Well, the most recent was Haskell in 2013, which was a similar case where the defendant had argued the same immunities as in this case. And the court actually talked about the Murray case in that case. The court said because there was no specific provision set forth in Article III, such as what was set forth in Murray, that there was no particular provision that applied in that case, and thus there needed to be a discretional immunity analysis. In Corson, back in 2002, again, this very same court, there was a summary judgment case that came up on appeal. This was pre-Murray, but Corson specifically addressed Section 3102 and said that it is not a separate enactment. It imposes a duty to exercise reasonable care to maintain the property, and that such duty does not fall within the immunity of Section 2-201. And the court found that nevertheless, the intentional removal of a safety shield cannot be characterized as a failure to maintain property. Now, obviously, here we have a sidewalk. Clearly, the failure to maintain a sidewalk falls within 3-102, but we're not necessarily asking this court to overturn Kennell because there's been two cases. Has any of those other cases said Kennell was not correctly decided? None of them. It never got brought up. Kennell was not brought up in terms of that. You're arguing as if Kennell is dubious authority. It is. And certainly, I think it probably does need to be overturned, but I think Murray has essentially already done that. And I think what Murray talks about was... So he did it without acknowledging he's doing it? Without specifically stating it, yes. And so both Kennell and Richter would have to be rejected? Again, I don't know that Richter needs to because there was the waiver issue. If there was no waiver issue and the court had come down in the same way that it did with this very argument that's being made in our case, certainly I think it needs to be overruled. But in that case, because there was a waiver, I'm not necessarily arguing that their analysis of discretional versus ministerial was incorrect. The issue is it never should have gotten there but for the waiver. And certainly, I think in a perfect world, Kennell needs to be overturned. And I think the analysis in Murray that talks about this line of cases counsel has cited, in Murray, the court specifically said the problem with these cases in the Article II and Article III analysis is people have not been reading the laws written. There's been a bunch of waivers and there's been significant... It was very critical of the other courts. Kennell was 15 years ago, was it not? Kennell was back in 1992. And that was an interpretation of the application of the Tort Immunity Act? It was, Your Honor. Except for there was absolutely no discussion as to the except as otherwise provided section. Well, I understand that. But the reason I make reference to this is when this court or other courts of review are interpreting statutes and as you are arguing, we got it wrong. The recourse can, of course, be across the street where they can fix it and say, you know, in fact, we have many instances where the legislature has done just that with decisions of this court or the Illinois Supreme Court. Fifteen years has passed and why isn't the inaction of the legislature with regard to what we said and Kennell an indication that maybe we got it right? I don't know that anything that happens across the street is an indication that anything is done right or wrong over in this court. I think that's getting into a whole new ball of wax, certainly with politics, especially in light of what's been going on in our legislature here in Illinois of late. I don't know that they would have much of a recourse to get much of anything done, given our current state of affairs. But I think if we go back to Murray for a second, the problem with this entire line of cases is that there has been waivers. There's been insufficient consideration of the except as otherwise provided sections. It's almost as if over the line of looking at these two articles, people just read over that as if it's irrelevant and it's not. Because Article 3-102 specifically says except as otherwise provided by this article. If you do a plain language analysis, you've got to look within that article for the exceptions to that duty. Thank you, counsel. You're out of time. I take this matter under advisement and be in recess.